**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Greenbelt Division**

TYLER, DONEGAN, DUNCAN REAL ESTATE SERVICES, INC.,
10087 Tyler Ct., Suite 2,
Ijamsville, Maryland 21754

Plaintiff,

v.

WESTERN SURETY COMPANY,

Defendant.

Civil Action No. 8:19-cv-00041

## COMPLAINT

Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201, Plaintiff Tyler, Donegan, Duncan Real Estate Services, Inc., ("Tyler") by undersigned counsel, files this Complaint against Defendant Western Surety Company ("Western"), and states as follows:

### Parties

1. At all times relevant, Plaintiff Tyler, Donegan, Duncan Real Estate Services, Inc. was a real estate property management company having its principal place of business in Ijamsville, Maryland, at the captioned address, formerly known as Tyler-Donegan Real Estate Services, Inc.

2. At all times relevant, TD Healthmed Realty Partners, LLC was a wholly-owned subsidiary of Tyler and was the property manager of the medical facility condominium called Robinwood Medical Center Condominium, Inc. ("RMCC") located in Hagerstown, Maryland 21742. Chad Tyler was the Managing Member of TD Healthmed Realty Partners, LLC.

3. At all times relevant, Defendant Western Surety Company was an insurance company incorporated in South Dakota, with its principal place of business in Sioux Falls, South Dakota, authorized to do business within the State of Maryland and actually doing business within the State of Maryland, including, but not limited to, the actual issuance and sale of various insurance contracts and/or employee dishonesty bonds, a type of fidelity bond.

## Jurisdiction & Venue

4. The amount in controversy is in excess of $75,000.

5. This Court has original jurisdiction over this matter under 28 U.S.C. § 1332(a)(1) on the ground that complete diversity exists between all parties and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

6. Venue is proper in this Court because Western was regularly engaged in the business of providing employee dishonesty bonds in Maryland, and all acts and business transactions that are relevant to this action occurred in the State of Maryland.

## Facts

7. On September 19, 2013, Western issued a Dishonesty Bond, Bond No. 71462328, to Tyler, effective for the period between noon of September 19, 2013 and noon of the date of cancellation or termination of the Dishonesty Bond. The Policy was renewed annually and was in force at the times of the losses involved in this case. A true and correct copy of the Dishonesty Bond is attached hereto as Exhibit 1 and incorporated by reference.

8. The limit of liability of the Dishonesty Bond was set as $100,000.00 per each employee who commits any fraudulent or dishonest act causing Tyler's loss of money.

9. Tyler paid all premiums charged by Western for the Dishonesty Bond, and the subject Dishonesty Bond was issued to Tyler on September 19, 2013, and remains full force as of today.

10. The Dishonesty Bond, in relevant part, states the following:

> INSURING AGREEMENT
> The Underwriter, in consideration of the payment of the premium, and subject to the Declarations made a part hereof, the General Agreements, Conditions and Limitations, and other terms of this Bond, agrees to indemnify the Insured against any loss of money or other property which the Insured shall sustain or for which the Insured shall incur liability through any fraudulent or dishonest act or acts committed by any of the Employees, acting alone or in collusion with others, the amount of indemnity on each of such Employees being the amount stated in Item 3 of the Declarations [$100,000.00].
>
> . . . .
>
> BOND PERIOD, TERRITORY, DISCOVERY
> Section 1. Loss is covered under this Bond only if discovered not later than two years from the end of the Bond Period.
>
> Subject to General Agreement C, this Bond applies only to loss sustained by the Insured [Tyler] through fraudulent or dishonest acts committed during the Bond Period by any of the Employees engaged in the regular service of the Insured within any of the States of the United States of America . . . .
>
> . . . .
>
> DEFINITION OF EMPLOYEE
> Section 3. As used in this Bond, "Employee" means any natural person (except a director or trustee of the Insured, if a corporation, who is not also an officer or employee thereof in some other capacity) while in the regular service of the Insured in the ordinary course of the Insured's business during the Bond Period and whom the Insured compensates by salary, wages or commissions and has the right to govern and direct in the performance of such service, but does not mean any broker, factor, commission merchant, consignee, contractor or other agent or representative of the same general character.
>
> . . . .
>
> LOSS-NOTICE-PROOF-ACTION AGAINST UNDERWRITER
> Section 7. Upon knowledge or discovery of loss under this Bond, the Insured shall: (a) give notice thereof as soon as practicable to the Underwriter or any of its authorized agents, and (b) file detailed proof of loss, duly sworn to, with the

Underwriter within four months after the discovery of loss.

Upon the Underwriter's request, the Insured shall produce for the Underwriter's examination all pertinent records, at such reasonable times and places as the Underwriter shall designate, and shall cooperate with the Underwriter in all matters pertaining to loss or claims with respect thereto.

11. On September 3, 2013, Keith Clever was employed by Tyler as a Director of Property Services to oversee the day-to-day operation of Tyler's on-site staff and supervise any construction and repair work performed at the Robinwood Medical Center Condominium in Hagerstown, Maryland ("RMCC").

12. Tyler paid Mr. Clever an annual salary of $75,000 while he was employed by Tyler until January, 10, 2017, when the employment was terminated.

13. On December 1, 2009, Jeffrey M. Cahall was employed by Tyler as a Manager of certain designated real estate activities for Tyler, whose responsibility, from September 17, 2013, involved the management of the RMCC facility.

14. During Mr. Cahall's employment, which was terminated on January 10, 2017, Tyler compensated Mr. Cahall by salary advancements and/or commissions. Mr. Cahall performed his management duties under the general direction and control of Tyler's corporate officers, specifically Chad Tyler, who was the President of Tyler and the Managing Member of TD Healthmed Realty Partners, LLC.

15. Since September 2013 until January 10, 2017, Mr. Cahall directed work of Tyler's other employees and provided supervision of Tyler's on-site operations at the RMCC.

16. In September 2013, Jacqueline Pieterse was employed by Tyler as a medical administrative management support assistant for Tyler's wholly-owned subsidiary, "TD Healthmed Realty Partners, LLC."

17. On January 10, 2017, Ms. Pieterse's employment was terminated.

18. On September 17, 2013, Tyler entered into an agreement with the Robinwood Medical Center Condominium, Inc. ("RMCC Agreement") to manage the RMCC.

19. Upon commencement of the RMCC Agreement, on November 22, 2013, Tyler opened a checking account, "Robinwood Medical Center II Condo Association" at The Columbia Bank's Dual Highway Branch located in Hagerstown, Maryland, for the management of the RMCC.

20. From September 17, 2013 through May of 2015, all checks, including fees and checks for construction activities, received from the RMCC and various condos were delivered to Tyler's bookkeeper in its principal office in Ijamsville, Maryland, and deposited into the appropriate accounts controlled by Tyler.

21. On July 10, 2015, after opening an unauthorized account "HMRP INC HEALTHMED," which imitated Tyler's wholly-owned subsidiary company TD HealthMed Realty Partners, LLC, through which Tyler was performing construction services at the RMCC, Mr. Clever, Mr. Cahall, and Mrs. Pieterse (collectively, the "three defaulting employees") began stealing checks made out to "Tyler Donegan Real Estate Services, Inc." or "TD HealthMed Realty Partners, LLC" and unlawfully deposited the checks into the unauthorized account "HMRP INC HEALTHMED" controlled by the three defaulting employees at The Columbia Bank's Dual Highway Branch located in Hagerstown, Maryland.

22. No earlier than January 7, 2017, Tyler discovered a possible fraud perpetuated by Mr. Clever, Mr. Cahall, and Mrs. Pieterse. At the time, Tyler only found out that Tyler's "Robinwood Medical Center II Condo Association" account was closed by Keith Clever, which account closing was unauthorized by Tyler, and that monies were transferred to a different account opened by the three defaulting employees.

23. Subsequently, Tyler discovered that Mr. Clever, Mr. Cahall, and Ms. Pieterse conspired to take checks, which were made out to "Tyler Donegan Real Estate Services, Inc" or its wholly-owned subsidiary "HealthMed Realty Partners" and received by Tyler's regional office at the RMCC in Hagerstown, Maryland, and, instead of delivering them to Tyler's bookkeeper at its principal office to be deposited into the appropriate accounts, took 384 checks in the total amount of $415,664.70 and deposited in the account controlled by the three defaulting employees during the period from the May of 2015 through January 6, 2017.

24. This full extent of loss in the total amount of $459,762.70 was not fully ascertainable until Tyler secured information (copies of bank statements, as well as copies of the checks fraudulently deposited into the "HMRP INC HEALTHMED" account controlled by the three defaulting employees) from The Columbia Bank upon completion of discovery by subpoena, at the end of July 2017, after issuing a subpoena to The Columbia Bank.

25. Copies of all the fraudulently stolen checks, which rightfully belonged to Tyler or its subsidiary TD Healthmed Realty Partners, LLC but were deposited into the HMRP INC HEALTHMED account at The Columbia Bank's Dual Highway Branch, were not furnished by The Columbia Bank until approximately July 28, 2017,

26. On October 20, 2017, Chad Tyler, as the Authorized Representative of Tyler and the Managing Member of TD Healthmed Realty Partners, LLC, filed a detailed sworn proof of loss (Claim No. 9A354647 CE) with Western, in the amount of $459,762.70.

27. Western has delayed making a decision on the proof of loss claim for unreasonable period of time in breach of its obligations under the Dishonesty Bond, as more than one year has lapsed since the detailed sworn proof of loss was submitted to Western on October 20, 2017.

**Count I – Breach of Contract**

28. Plaintiff Tyler alleges, incorporates, and asserts by reference all allegations set forth above in Paragraphs 1 through 27.

29. The Dishonesty Bond is a valid and enforceable contract between Tyler and Western, which requires Western to provide coverage to Tyler for losses caused by employee fraud and dishonesty.

30. Tyler fully performed all of its obligations under the Dishonesty Bond.

31. Plaintiff incurred losses as a direct result of the fraud and dishonesty by the three defaulting employees.

32. By not taking any action or making payment, Western effectively denied and disclaimed coverage, and breached its obligations to pay and/or indemnify Tyler for its loss under the Dishonesty Bond.

33. As result of the foregoing breach, Tyler incurred damages in an amount in excess of $300,000, including the $100,000 coverage for each defaulting employee

**Count II – Declaratory Judgment Against Western Surety Company**

34. Plaintiff Tyler alleges, incorporates, and asserts by reference all allegations set forth above in Paragraphs 1 through 32.

35. An actual dispute exists between Tyler and Western as to the rights of Tyler and the obligations of Western under the Dishonesty Bond.

36. Tyler is entitled to a declaratory judgment of its rights against Western under the Dishonesty Bond, including, but not limited to, the following declarations:

(a) The Dishonesty Bond was in full force and effect when Tyler first discovered the fraud by the three defaulting employees;

(b) The three defaulting employees, Mr. Clever, Mr. Cahall, and Ms. Pieterse were employees of Tyler;

(c) The three defaulting employees committed fraudulent and dishonest acts with the intent to cause Tyler's losses and to obtain an improper benefit for themselves;

(d) Tyler suffered losses directly from the fraudulent and dishonest acts by the three defaulting employees;

(e) No exclusion listed in the Bond applies;

(f) Tyler timely provided notice of the claim, submitted a detailed sworn proof of loss, and fully cooperated in Western's investigation; and

(g) Tyler is entitled to coverage under the Dishonesty Bond for the losses incurred as a direct result of the fraudulent and dishonest actions of the three defaulting employees.

**Prayer for Relief**

WHEREFORE, Plaintiff Tyler respectfully demands judgment in Plaintiff's favor and against Defendant Western, awarding the following relief:

(1) Damages in an amount in excess of $300,000 to be proved at the trial of this matter;

(2) An Order declaring that:

(a) The Dishonesty Bond was in full force and effect when Tyler first discovered the fraud by the three defaulting employees;

(b) The three defaulting employees, Mr. Clever, Mr. Cahall, and Ms. Pieterse were employees of Tyler;

(c) The three defaulting employees committed fraudulent and dishonest acts with the intent to cause Tyler's losses and to obtain an improper benefit for themselves;

(d) Tyler suffered losses directly from the fraudulent and dishonest acts by the three defaulting employees;

(e) No exclusion listed in the Bond applies;

(f) Tyler timely provided notice of the claim, submitted a detailed sworn proof of loss, and fully cooperated in Western's investigation; and

(g) Tyler is entitled to coverage under the Dishonesty Bond for the losses incurred as a direct result of the fraudulent and dishonest actions of the three defaulting employees.

(3) Interest, including pre-judgment and post-judgment interest;

(4) The costs and expenses incurred in connection with this matter, including reasonable attorneys' fees; and

(5) All such other and further relief, as is just and equitable.

**Jury Demand**

Plaintiff demands trial by jury for any issue so triable in this action.

Date: January 4, 2019

Respectfully submitted,

By: /s/ Herman Braude
Herman M. Braude Esquire
(MD Bar No. 02573)
Braude Law Group, P.C.
11820 Parklawn Drive, Ste 401
Rockville, MD 20852
(202) 471-5400 (voice)
(202) 471-5404 (fax)
Counsel for Tyler Donegan Duncan Real Estate Services, Inc.